**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.                                                                              Case No. 6:13-cr-253-Orl-37GJK

JAMES LARRY WILBORN
_____

**ORDER**

This cause is before the concerning Defendant James Larry Wilborn's continued commitment to the custody of the Attorney General for a determination of his competency to stand trial. The Court held a status conference on March 18, 2015, and indicated that Defendant's commitment would continue for an additional 120 days. Upon reflection and additional consideration of Defendant's weighty liberty and due process rights, the applicable law, and the record before the Court, the Court has determined that it cannot order Defendant's continued commitment absent a full and prompt evidentiary hearing.

**BACKGROUND**

Defendant is a seventy-year-old man with significant health issues who is facing three charges in this action—wire fraud (Count I), receipt, possession or sale of stolen firearms (Count II), and making false statements in required information kept by a firearms dealer (Count III). (*See* Doc. 10 (Indictment); *see also* Doc. 50, ap. 3 (noting Defendant's age, health issues—including acute hearing loss—and the number of daily medications he must take).) Defendant was arrested and made his first appearance before a judicial officer of this Court more than eighteen months ago. (*See* Docs. 1, 3.)

The Court promptly appointed attorney Amanda Regina Jacobson to represent the Defendant (*see* Doc. 6), and then released him on bond (*see* Doc. 8; *see also* Doc. 24 (modifying bond conditions to require home confinement); Doc. 31 (modifying bond conditions to permit 45 minutes of daily exercise outside his home); Doc. 67 (modifying bond conditions to permit Defendant's travel to Georgia for a funeral)).

Less than one month after Ms. Jacobson's appointment, she filed a motion pursuant to 18 U.S.C. § 4241 requesting that the Court appoint a mental health expert to determine the Defendant's competency to stand trial. (*See* Doc. 17 (advising that Ms. Jacobson "cannot effectively represent" Defendant given his "mental health issues that affect his ability to adequately assist" her in his defense).) U.S. Magistrate Judge Gregory J. Kelly granted the motion the day after it was filed.[1] (Doc. 20.)

On November 26, 2013, a Forensic Psychological Evaluation of Defendant was filed under seal ("First Report"). (*See* Doc. S-25.) The First Report advised that Defendant suffers from certain deficits (particularly hearing loss) that could be managed in the courtroom, and concluded that Defendant was not mentally incompetent. (*See id.*) Judge Kelly then held an evidentiary hearing on December 20, 2013, and after hearing the Defendant testify, Judge Kelly ordered the Defendant to submit to "an immediate psychiatric examination" to further assess his competency. (*See* Doc. 30; *see also* Doc. 29.) Defendant submitted to the examination, and the examiner filed a report under seal on March 3, 2014 ("Second Report"). (*See* Doc. S-38.) Like the First Report, the

---

[1] In his Order, Judge Kelly correctly observed that "the period of delay resulting from the mental examination and from any mental incompetence is excluded in calculating time pursuant to 18 U.S.C. § 3161" (Doc. 20). *See* 18 U.S.C. § 3161(h)(1)(A) (providing that any period of "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" shall be "excluded" when "computing the time within which the trial of any such offense must commence").

2

Second Report advised that Defendant suffers from certain manageable deficits, and concluded that Defendant was not mentally incompetent. (*See id.*)

After holding another evidentiary hearing on April 15, 2014 (*see* Doc. 46–47), Judge Kelly recommended that the Court find Defendant competent to stand trial ("R&R") (*see* Doc. 49). Defendant filed objections (Doc. 50), and the Government responded (Doc. 52). The Court adopted and affirmed the R&R, and held that Defendant was competent to stand trial and would be provided accommodations concerning his hearing difficulties. (*See* Doc. 53.)

Two weeks after the Court held that Defendant was competent to stand trial—on May 30, 2014—Defendant was arraigned, and he pled "not guilty." (Docs. 54, 55.) Twenty-one days later, Defendant filed a written waiver of his speedy trial rights (*see* Doc. 61), which was followed by a series of requests from Defendant to continue the proceedings (*see* Docs. 63, 65, 69–71). (*See also* Doc. 68 (providing the Government's calculation under the Speedy Trial Act).) On August 20, 2014, Defendant filed another motion to determine his competency pursuant to Title 18, United States Code § 4241. (*See* Doc. 73.) With his motion, Defendant submitted a Forensic Neuropsychological Evaluation ("Third Report"), which opined that Defendant was mentally incompetent, and "would benefit from additional service to assist him in restoring his competence." (*See* Doc. 76, p. 10 (observing that Defendant's "overall presentation is complicated").)

Based on the Third Report, Judge Kelly ordered the parties to submit additional briefing. (*See* Docs. 78, 81.) The Government responded with a request that Defendant be committed to the custody of the Attorney General for a more comprehensive competency examination in accordance with § 4247(b). (*See* Doc. 80, pp. 6–8.)

Defendant objected to that request as being "incongruently punitive" and "impractical" given Defendant's health conditions and anticipated surgical procedure. (*See* Doc. 82, pp. 1–3). Defendant further argued that a Bureau of Prisons facility ("BOPF") "would be unlikely" to diagnose the dementia condition noted in the Third Report. (*See id.* at 3.)

At an evidentiary hearing before Judge Kelly on September 23, 2014, Dr. Jacquelyn Orlander (who authored the Third Report) testified in response to questions from counsel and the Court, and a representative of the U.S. Marshall Service ("USMS") responded to Judge Kelly's questions concerning the qualifications of the BOPF. (*See* Docs. 85, 86, 89.) Immediately after the evidentiary hearing, Judge Kelly entered a written Order finding "reasonable cause" to believe that Defendant was not competent to stand trial and that a "thorough" evaluation of Defendant in a BOPF was "appropriate" given the conflicting evidence concerning Defendant's competency. (*See* Doc. 87, pp. 3–4.) Accordingly, pursuant to § 4247(b), Judge Kelly committed Defendant to the custody of the Attorney General for a term "not to exceed thirty days" for a psychiatric or psychological examination in a BOPF ("Custody Order"). (*See id.* at 4–5 & ¶¶ 7, 10.)

Defendant did not object to the Commitment Order, and on December 8, 2014, Defendant surrendered himself to the USMS for transportation to a BOPF. (*See* Doc. 94; *see also* Docs. 91, 92 (extending deadline for Defendant to surrender).) Due to a transportation delay, the USMS did not move Defendant until December 23, 2014, and he was not admitted to the Mental Health Unit at the Federal Medical Center in Butner, North Carolina ("Butner Facility"), until January 6, 2015. (*See* Doc. 95.) In correspondence dated January 8, 2015, the Warden of the Butner Facility ("Warden") requested that the Court extend Defendant's evaluation period by fifteen days (from the

date of his arrival at the Butner Facility) until February 19, 2015. (*See id.*) Judge Kelly granted the request on January 13, 2015 (*see id.*), and Defendant did not file objections.

On March 11, 2015, the Court received an e-mail from a Butner Facility employee, which attached correspondence dated March 6, 2015, from the Warden ("Butner Letter"). The Butner Letter enclosed a 19-page "Forensic Evaluation" ("Fourth Report"), which was signed by a Staff Neuropsychologist, a Predoctoral Psychology Intern, and a Forensic Psychologist ("Evaluators"). The Butner Letter and the Fourth Report request that the Court order "a 120-day period for continued treatment" of the Defendant pursuant to § 4241(d). The Court immediately set the matter for a status conference (*see* Doc. 96), which was held on March 18, 2015. Ms. Jacobson appeared at the status conference on behalf of Defendant, and Assistant United States Attorney Andrew C. Searle appeared on behalf of the Government.

## LEGAL STANDARDS

### I.    Incompetency Standard

"The due process clause prohibits the trial or guilty plea of a person who is mentally incompetent." *United States v. Fuenmayor-Arevalo*, 490 F. App'x 217, 225 (11th Cir. 2012) (citation omitted); *see also United States v. Crawford*, 300 F. App'x 716, 717 (11th Cir. 2008) (noting that a criminal defendant's competency is "an ongoing inquiry"). Defendants are mentally incompetent if they presently suffer "from a mental disease or defect" rendering them "mentally incompetent to the extent that [they are] unable to understand the nature and consequences of the proceedings against [them] or to assist properly in [their] defense" ("Incompetency Standard"). *See* 18 U.S.C. § 4241(a); *see also Dusky v. United States*, 362 U.S. 402, 402 (1960) ("[T]he test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a

reasonable degree of rational understanding—and whether [the defendant] has a rational as well as factual understanding of the proceedings against him.").

## II.     § 4247(b) Custody Orders

If a court finds that "there is reasonable cause to believe that the defendant" satisfies the Incompetency Standard, then the court "must order a competency hearing." *See United States v. Michel*, 511 F. App'x 918, 919 (11th Cir. 2013) (quoting 18 U.S.C. § 4241(a)); *see also United States v. Rosin*, 263 F. App'x 16, 33 (11th Cir. 2008) (noting that a "bona fide doubt" concerning competence necessitates a competency hearing). Such a "reasonable cause" finding also provides courts with authority pursuant to § 4247(b) to commit a defendant, for a period of time not to exceed thirty days, to the custody of the "Attorney General for placement in a suitable facility" for purposes of a "psychiatric or psychological examination . . . by a licensed or certified psychiatrist or psychologist." *See* 18 U.S.C. § 4247(b); *see also id.* § 4241(b) (providing that courts may order a psychiatric examination of a defendant "pursuant to the provisions of" § 4247(b)). Although an initial commitment order pursuant to § 4247(b) may not exceed thirty days, a facility director may request an extension of no more than fifteen days "upon a showing of good cause that additional time is necessary to observe and evaluate the defendant." *See id.* § 4247(b)

## III.    § 4241(d) Custody Orders

Commitment of a defendant for a period of time beyond that provided by § 4247(b) is permitted under § 4241(d), but it requires that a court find that the Incompetency Standard is met by a "preponderance of the evidence" after a hearing

"conducted pursuant to the provisions of section 4247(d)."[2] Upon satisfaction of these requirements, a court may commit a defendant to the custody of the Attorney General who "shall hospitalize the defendant" for treatment in a suitable facility "for such a reasonable period of time, *not to exceed four months*, as is necessary to determine whether there is a substantial probability that in the foreseeable future [the Defendant] will attain the capacity to permit the proceedings to go forward." *See* 18 U.S.C. § 4241(d)(1) (emphasis added). Section 4241(d)(2)(A) permits commitment of a defendant for an "additional reasonable period of time," but only if the court finds that there is "*a substantial probability* that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A) (emphasis added).

## DISCUSSION

The Butner Letter and Fourth Report request that the Court enter a § 4241(d) custody order. (*See* Butner Letter, p. 1 ("[W]e recommend a 120-day period for continued treatment pursuant to . . . 4241(d).") The Court cannot enter such an order because the requisite hearing has not occurred,[3] and the current record is insufficient to

---

[2] Pursuant to section 4247(d), the defendant must be represented by counsel, must "be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing."

[3] Judge Kelly held several evidentiary hearings that satisfied the requirements of § 4247(d) (*see* Docs. 29, 46–47, 85). At the first hearing on December 20, 2013, Judge Kelly determined only that an additional, non-custodial, psychiatric examination of Defendant was warranted. At the second hearing on April 15, 2014, Judge Kelly determined that the Defendant was competent to stand trial. Finally, in advance of the September 23, 2014 hearing, the Government requested the far more limited § 4247(d) Custody Order, and Judge Kelly assessed Defendant's competency based on "reasonable cause"—not "a preponderance of the evidence." Because these three evidentiary hearings did not contemplate or provide notice of the possibility of the lengthy commitment permitted by § 4241(d), the Court finds that the Defendant's right to a hearing pursuant to § 4247(d) has not been satisfied.

7

support a finding that Defendant meets the Incompetency Standard by "a preponderance of the evidence."

The expert reports submitted to date are either contradictory or ambiguous concerning the crucial issue of whether Defendant satisfies the Incompetency Standard. Although the Third Report opined that Defendant was mentally incompetent, that opinion was based on two examinations of Defendant that occurred more than eight months ago, and it is contradicted by the First and Second Reports which both found that Defendant is mentally competent.

The Fourth Report is the most comprehensive one submitted to the Court; however, the Evaluators declined to offer an opinion concerning Defendant's competency. Instead, they wrote that they were "unable to offer a definitive opinion regarding [Defendant's] competency at this time," or to "determine the legitimacy of his delusions." (*See* Fourth Report, p. 18; *see also* Butner Letter, p. 1.) Nonetheless, the Evaluators recommend that Defendant remain at the Butner Facility for 120 days[4] to "complete the restoration evaluation"[5] in accordance with § 4241(d).[6] (*See* Fourth

---

[4] That Evaluators also provide no explanation for why they consider 120 days (as opposed to 30, 60, or some other period) to be a "reasonable period of time" to achieve the goals set forth in § 4241(d)(1), although that period does coincidentally correspond to the maximum time permitted for commitment under § 4241(d)(1).

[5] The meaning of a "restoration evaluation" is unclear and confusing given the Warden's representation that the "psychiatric evaluation" of Defendant "has been completed." (*See* Butner Letter, p. 1.) Further, restoration of a defendant's competence appears to be the purpose of § 4241(d), but it is premised on a finding that the Evaluators will not endorse—that that Defendant is mentally incompetent. In contrast, evaluation ("examination") of a defendant is the focus of § 4247(b).

[6] Although § 4241(d) contemplates efforts to restore a defendant's competency, The Evaluators suggest little in the way of rehabilitation. They write only that: (1) a "potential trial period of psychotropic medication" might be attempted if Defendant were "amenable to such treatment," (although they note that he had not been amenable to date); and (2) "antipsychotic medication may help alleviate delusional beliefs and restore [Defendant] to competency." (*See* Fourth Report, pp. 18–19.)

8

Report, p. 18.) The Evaluators also provide the seemingly contrary opinion that Defendant "is ready to be returned to court for further legal proceedings." (*Id.*) Given the Evaluators' equivocal and seemingly contradictory opinions, the Court finds that the Fourth Report does not support a finding that Defendant meets the Incompetence Standard by a preponderance of the evidence.

The status conference held on March 18, 2015, did little to elucidate whether the Incompetence Standard is met by a preponderance of the evidence. Defendant's counsel advised the Court that she had not spoken with Defendant since he surrendered himself to the USMS in December. Nonetheless, she objected to Defendant's continued detention at the Butner Facility, she urged the Court to release him for further evaluation and possible treatment from his home, and she noted that nothing in the Fourth Report indicated that Defendant could not assist her in his defense if he is provided with necessary accommodations. The Government objected to Defendant's release, but it offered no substantive arguments.

On the present record, the Court cannot enter an Order committing Defendant to the custody of the Attorney General for evaluation and possible treatment at the Butner Facility for an additional 120 days.[7] Defendant is presumed to be innocent, and the Court takes his right to liberty just as seriously as his due process right to be competent during these criminal proceedings. Accordingly, the Court will Order that Defendant be returned to this Court for an evidentiary hearing to fully address these weighty issues.

The parties should be prepared to present all available evidence pertinent to the present status Defendant's mental competence as well as arguments concerning the

---

[7] Entry of a § 4247(b) Custody Order is not an option because: (1) the custody time limits under that provision have indisputably passed; and (2) the Butner Facility's request was plainly made under § 4241(d).

appropriate course of these proceedings. In this regard, the Court notes the Government's statements at the status conference that it is currently evaluating the viability of its case against Defendant given the recent and tragic demise of the lead case agent. Given the circumstances, the Government should make every effort to expedite its evaluation of this case. Finally, the parties are advised that the Court will set the hearing on the earliest possible date that is consistent with the safe transportation of Defendant from the Butner Facility and the Defendant's opportunity to exercise his rights under § 4247(d), including his rights to "present evidence" and "subpoena witnesses."

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The U.S. Marshall's Service is **DIRECTED** to transport Defendant forthwith from the Butner Facility to his Residence in this District.

2. Defendant James Larry Wilborn is **DIRECTED** to report to Pretrial Services within two calendar days from the date he arrives at his Residence.

3. Defendant James Larry Wilborn is further **DIRECTED** to fully comply with the Court's Order setting the conditions of his release on bond (Doc. 8), as modified by the Court's Orders dated October 30, 2013 (Doc. 23) and December 20, 2013 (Doc. 31). Any failure to comply with these conditions may result in revocation of the Orders releasing Defendant from custody.

4. The matter will be set for an evidentiary hearing in a later Order.

5. No later than **two business days** before the evidentiary hearing, the parties **SHALL** file Pre-Hearing Statements with the Court, which:

      (a) identify the witnesses who will testify and the documents that will be offered into evidence; (b) summarize the issues to be addressed at the evidentiary hearing and the expected duration of the hearing; and (c) provide statements of the applicable law and the parties' respective recommendations concerning the fair and efficient resolution to this action.

6. The parties are **GRANTED LEAVE** to file the materials required by this Order **UNDER SEAL** as necessary to protect from disclosure any of Defendant's medical records or other matters considered to be confidential or private.

7. The Court will provide the Clerk with copies of the Butner Letter and the Fourth Report, which have been cited extensively in this Order, and the Clerk is **DIRECTED** to file the documents on the record in this action **UNDER SEAL**.

8. The Defendant is advised that after the evidentiary hearing, if the Court finds by a preponderance of the evidence that he is mentally incompetent to stand trial, then the Court may order that he be committed to the continued custody of the Attorney General in accordance with 18 U.S.C. § 4241(d).

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 19, 2015.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

U.S. Marshall's Service